# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| FISHDISH, LLC,<br><br>        Appellant,<br><br>vs.<br><br>VEROBLUE FARMS USA, INC.,<br>BROADMOOR FINANCIAL, L.P., and,<br>ALDER AQUA, LTD.,<br><br>        Appellees. | No. 19-CV-3026 CJW<br><br>**MEMORANDUM OPINION AND ORDER** |

      This matter is before the Court on VeroBlue Farms USA, Inc., Broadmoor Financial L.P., and Alder Aqua, Ltd.'s (collectively "appellees") jointly filed Motion to Dismiss Appeal and Partial Motion to Dismiss Appeal. (Docs. 9 & 10). FishDish, LLC ("appellant") appeals the Bankruptcy Court for the Northern District of Iowa's Order Confirming a Chapter 11 Plan ("Plan Confirmation") and four related Orders. (Doc. 4, at 1). Appellees' Motion to Dismiss Appeal seeks to dismiss appellant's appeal of the Plan Confirmation and the related Orders. (Doc. 9). Appellees' Partial Motion to Dismiss is directed only at one of the four related Orders, namely the Order denying FishDish's Objection to Broadmoor Finance LC's Claims. (Doc. 10). Appellant timely resisted both the Motion to Dismiss and the Partial Motion to Dismiss in an omnibus response. (Doc. 28). Appellees timely filed replies and appellant timely filed an omnibus surreply. (Docs. 34, 36, 37, & 41). For the following reasons, appellees' Motion to Dismiss and Partial Motion to Dismiss are **granted**.

# I. BACKGROUND

Appellant alleges VeroBlue Farms USA, Inc. (individually "debtor") is "in the business of farming fish . . . and selling those fish through wholesalers to restaurants and grocery chains." (Doc. 28, at 4). Appellant alleges debtor relied on both debt and equity financing to develop and grow its business. (*Id.*). Despite securing debt and equity financing, debtor was unable to sufficiently sustain the company and voluntarily filed Chapter 11 Bankruptcy petitions on September 21, 2018. (*Id.*, at 6). Following bankruptcy proceedings in the Northern District of Iowa Bankruptcy Court, appellant alleges a Bankruptcy Plan ("Plan") was confirmed on April 22, 2019, and the final confirmation order was entered on May 7, 2019, with an effective date of May 22, 2019. (*Id.*, at 13). Appellant alleges that on May 30, 2019, debtor reported making payments to several claims under the Plan and that debtor subsequently made additional payments to creditors on June 14, 2019. (*Id.*, at 14). In addition, appellant alleges debtor sent notifications cancelling outstanding shares of preferred stock on June 13, 2019. (*Id.*, at 16).

Alder Aqua, Ltc. (individually "Alder Aqua") and Broadmoor Financial, L.P. (individually "Broadmoor") are also included as appellees in this appeal. Appellant alleges Alder Aqua helped finance debtor by purchasing $28 million of preferred shares. (Doc. 28, at 4). After debtor entered bankruptcy proceedings, Alder Aqua agreed to provide the equity necessary for debtor to make payments in exchange for all equity interests in the reorganized debtor. (*Id.*, at 15). Broadmoor, as a creditor of debtor, submitted a claim during debtor's bankruptcy proceeding. (*Id.*, at 5). Debtor had originally obtained a loan from Amstar Group, LLC. (*Id.*, at 5). "The Amstar loan was guaranteed by the other [debtor] and secured by substantially all [debtor's] assets." (*Id.*). Amstar transferred its rights under the loan agreement to Broadmoor in 2017. (*Id.*). Appellant now challenges Broadmoor's claim as part of this appeal.

Appellant was a preferred shareholder and owned approximately $6 million of equity in the debtor's company. (Doc. 28, at 36). Under the Plan confirmed by the Bankruptcy Court, appellant was unable to recover any of its investment because debtor did not have enough funds to pay equity holders. (*Id.*). The Bankruptcy Court found debtor was so insolvent that even under alternative plans there would likely not be enough funds to pay equity holders. (Doc. 9, at 6). Appellant alleges, however, that it was unable to recover any of its investment during the bankruptcy proceedings because the Plan Confirmation process was not conducted in good faith, lacked adequate discovery, and miscategorized certain categories of claims.

Appellant raises several specific issues on appeal. First, appellant argues the Bankruptcy Court improperly denied discovery requests during the bankruptcy proceeding that would have revealed information essential to resolving its claims. (Doc. 3, at 2). Second, appellant asserts the Bankruptcy Court improperly denied a request to challenge Broadmoor's claim, which may have recharacterized the nature of the claim. (*Id.*). Third, appellant argues the Bankruptcy Court did not provide the requisite notice and opportunity to object to the Disclosure Statement. (*Id.*). Fourth, appellant asserts the Bankruptcy Court erred in entering the Confirmation Order confirming the Plan because the appellees failed to treat equity holders equally and prove the Plan was confirmed in good faith, in the best interest of creditors, and feasible. (*Id.*, at 3-4).

Appellant further alleges that throughout the Bankruptcy proceeding there were several hearings, decisions, and orders issued by the Bankruptcy Court that wrongly contributed to the Plan's confirmation. (*Id.*, at 10-15). These orders include the Order Approving Amended Disclosure Statement, Order Denying Protective Motion of the Ad Hoc Committee, Order Denying Motion of Preferred Equity Shareholder FishDish for Leave to Initiate Limited Discovery, and Order on FishDish's Objection to Broadmoor Finance, LC's Claims. (Doc. 1, at 164-65).

## II. DISCUSSION

Title 28, United States Code, Section 158 provides: "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges." An appeal to a district court "shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." 28 U.S.C. § 158(a). "To elect to have an appeal heard by a district court, a party must: (1) file a statement of election that conforms substantially to the appropriate Official Form; and (2) do so within the time prescribed by 28 U.S.C. § 158(c)(1)." FED. R. BANK. P. 8005. Appellant elected to appeal to the district court pursuant to 28 U.S.C. § 158(a)(1) and complied with the requirements for appeal. Thus, jurisdiction in this Court is proper.

"When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court and reviews the bankruptcy court's legal determinations de novo and findings of fact for clear error." *In re Falcon Prods., Inc.*, 497 F.3d 838, 840 (8th Cir. 2007). In appealing to the district court, appellant challenges the determination made by the Bankruptcy Court and asks the district court to review the Bankruptcy Courts determinations.

Appellees argue the appellant's appeal to this Court should be dismissed for three reasons. First, appellees argue the appeal should be denied as equitably moot. (Doc. 9, at 1-4). Second, appellees assert appellant lacks standing to bring this claim because it does not have a pecuniary interest that has been harmed. (*Id.*, at 4-7). Third, appellees argue appellant did not properly preserve its objection to the Disclosure Statement and cannot raise an objection for the first time on appeal. (*Id.*, at 7). Appellees submit a fourth argument in the Partial Motion to Dismiss directed at the Order denying FishDish's Objection to Broadmoor Finance, LC's Claims. Appellees argue the appeal for the Order was not timely filed and should be denied. (Doc. 10, at 2-5).

## A. *Equitable Mootness*

Appellees first argue appellant's appeal should be dismissed as equitably moot because debtor has already paid substantial claims to creditors and mailed cancellation of share notifications to equity holders. (Doc. 9, at 3-4). Appellees further argue that because debtor has already substantially performed, it may be impossible to grant effective relief even if appellant could prevail on the merits. (Doc. 9, at 1-4).

The doctrine of equitable mootness applies in bankruptcy proceedings to "promote an important policy of bankruptcy law that court-approved reorganizations be able to go forward in reliance on such approval unless a stay has been obtained." *In re Info. Dialogues, Inc.*, 662 F.2d 475, 477 (8th Cir. 1981). In equitable mootness cases, the term "moot" does not apply in the traditional Article III sense involving cases and controversies where a judicial ruling would have no effect. *In re Pacific Lumber Co.*, 584 F.3d 229, 240 (5th Cir. 2009). Instead, "equitable mootness applies when a judicial ruling would have too much effect on the parties to a confirmed reorganization." *Id*. "[A] mootness concern arises when . . . it may be impossible for a court to grant effective relief because the disputed assets have been transferred pursuant to the reorganization plan." *In re Info. Dialogues, Inc.*, 662 F.2d at 477. The equitable mootness doctrine must be weighed against a strong competing interest of a party "in securing review of a bankruptcy order which adversely affects" the party. *Id.* An appellate court should only apply the doctrine of equitable mootness when "grant[ing] the relief requested will undermine the finality and reliability of consummated plans of reorganization." *In re Tribune Media Co.*, 799 F.3d 272, 277 (3d Cir. 2015).

Appellees argue that courts within the Eighth Circuit "consider five factors when determining whether an appeal is equitably moot in the context of a bankruptcy plan." (Doc. 36, at 3) (citing *In re President Casinos, In*c., No. 4:08CV1976 CDP, 2010 WL 582794, at *6 (E.D. Mo. Feb. 16, 2010)). The five factors are: "(1) whether the

5

reorganization has been substantially consummated; (2) whether a stay has been obtained; (3) whether the relief requested would affect the rights of parties not before the court; (4) whether the relief requested would affect the success of the plan; and (5) the public policy of affording finality of bankruptcy judgments." *Id.* (citing *In re Williams*, 256 B.R. 885, 896 n.11 (8th Cir. 2001)).

Appellant, however, argues there is no binding Eighth Circuit precedent and the Court should adopt the Third Circuit's approach to equitable mootness. (Doc. 28, at 19). The Third Circuit uses a two-step analysis which examines: "(1) whether a confirmed plan has been substantially consummated; and (2) if so, whether granting the relief requested in the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation." (*Id.* (citing *In re Tribune Media Co.*, 799 F.3d at 278)). This two-part analytical test was derived from the five-part test. *In re Tribute Media Co.*, 799 F.3d at 278.

A court should "decid[e] no more than necessary to dispose of the specific case under submission." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755 n.4 (1988). This Court does not need to decide which test is dispositive. Because courts in the Eighth Circuit have previously examined five factors, and because the more concise two-part test advanced by the appellants is derived from the five factors, the Court finds it instructive to consider all five factors to determine whether the appeal is equitably moot.

### *1. Substantially Consummated*

The Bankruptcy Code defines "substantial consummation" as:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;
(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
(C) commencement of distribution under the plan.

6

11 U.S.C. § 1101(2). Appellees support their argument that debtor has substantially consummated the Plan by providing several pieces of information. First, debtor has cancelled all its outstanding stock and paid $300,000 to Class 3 claimants, $620,000 to the Class 5 creditor trust, $6,000,000 to Broadmoor, and $5.025 million to Alder Aqua. (Doc. 36, at 7). Appellees argue that if the Bankruptcy Court's Plan Confirmation is reversed, all the payments will need to be disgorged and the stock cancellation will need to be rescinded. (*Id.*, at 8). Second, appellees argue subsection (B) was satisfied because "upon confirmation [of the Plan,] management of the business was automatically transferred to the reorganized Debtor[.]" (*Id.*, at 7). Third, appellees argue substantially all of the property proposed by the Plan has been transferred because the Plan only established $13.5 million would be transferred and nearly $12 million has already been transferred. (*Id.*, at 4-5).

Appellant argues substantially all of the property proposed by the Plan has not been transferred because $21.4 million in investments to recommence aquaculture operations remains unpaid. (Doc. 28, at 26). Appellees argue that to the extent there was a commitment to reinvest in the operations, those funds were not part of the property to be transferred in the Plan Confirmation. (Doc. 36, at 4-5).

This Court finds the Plan has already been substantially consummated. To determine whether a plan is substantially consummated, courts and parties consider factors such as whether payments have started and whether stock has been cancelled and reissued. *See In re Peabody Energy Corp.*, 582 B.R. 771, 780 (E.D. Mo. 2017). Here, there have already been $12,000,000 in payments made to claimants. (Doc. 36, at 7). Additionally, stock cancellation notifications have been sent and new stock and equity has been issued to the Plan Sponsor. (*Id.*). Thus, the Court finds this factor weighs in favor of concluding the doctrine of equitable mootness applies.

### *2. Existence of a Stay*

Appellant argues the existence of a stay pending appeal is not dispositive as to whether a claim is equitably moot. (Doc. 28, at 23). Although appellant may be correct, a failure to seek a stay "will weigh against the appellant in the equitable mootness calculation." *In re President Casinos, Inc*, 2010 WL 582794 at *6. A failure to grant a stay will not destroy appellant's claim, but it is a factor to be considered because "reliance interests are created" when a plan is confirmed and no stay is obtained. *In re United Producers*, 526 F.3d 942, 948 (6th Cir. 2008). Thus, this factor also weighs in favor of finding that the doctrine of equitable mootness applies.

### *3. Affect the Rights of Other Parties and the Success of the Plan*

Under the five-factor analysis for equitable mootness, courts consider "whether the relief requested would affect the rights of parties not before the Court" and "whether the relief requested would affect the success of the plan." *In re Williams*, 256 B.R. 885, 896 n.11 (8th Cir. 2001). The second step of the Third Circuit's analysis considers similar factors when it analyzes whether granting the relief requested in the appeal will "(a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation." *In re Tribune Media Co.*, 799 F.3d at 278.

Appellant concedes that any successful appeal will involve some scrambling, but alleges the interest in being able to pursue an appeal weighs more heavily unless the harm done to third parties is significant. (Doc. 28, at 29-30). Appellant alleges the parties who would be subject to the most significant harm are Broadmoor and Alder Aqua. (*Id.*, at 30). Appellant asserts that because Broadmoor and Alder Aqua are parties to this action, they are not "third parties" and therefore should not receive any greater protection. (*Id.*, at 30). Appellant also argues it would be possible to "unscramble the egg" and return the parties to "the pre-confirmation status quo." (*Id.*, at 26). Appellant asserts that "this [Plan Confirmation] is not a product of intense multiparty negotiation"

and only four events have occurred since confirmation which could all be easily undone. (*Id.*, at 28).

Appellees argue that if the Confirmation Order is reversed, several events will have to occur, such as requiring creditors to disgorge their funds, rescinding stock cancellation notices, revoking new stock issued to the Plan Sponsor, and changing management decisions. (Doc. 36, at 7-8). Appellees allege reversing each of these items could present challenges both known and unforeseeable and they cannot be undone with the simple "stroke of a pen." (*Id.*, at 8-9). Appellees do not directly address which third-parties will suffer the greatest harm if the appeal is successful but do mention other creditors and shareholders who support the Plan and might benefit from its finality. (*Id.*, at 11).

The Court finds that even if there have only been four events since confirmation, they would require disgorging creditors and would fatally scramble the Plan. For example, the payments made to the County for real estate taxes, the funds paid to the Unsecured Creditors' Trust, and the funds paid to Broadmoor would need to be disgorged. (Doc. 36, at 8). The Court agrees the parties who stand to lose the most from a successful appeal are Broadmoor and Alder Aqua because Broadmoor was awarded a $6,000,000 claim and Alder Aqua became the debtor in possession. (Docs. 36, at 8; Doc. 28, at 6). Broadmoor and Alder Aqua, however, are not third-parties because they are parties to this appeal. *In re Tribune Media*, 799 F.3d at 279-80 (discussing the impact an unraveled plan can have on other parties). The Court does, nevertheless, recognize that there are other creditors and shareholders who are third-parties that may be harmed. For example, Hamilton and Hardin Counties have received payment as class 3 claimants. (Debtors' Status Report Dkt. #608, at 1). The Court also finds the success of the Plan may be undermined by this appeal. The disgorgements and effect of reversal may not be as significant as appellee alleges is possible but undoing

9

what has already occurred will likely require more than just the "stroke of a pen." Thus, this factor, too, weighs in favor of concluding that the doctrine of equitable mootness applies.

### *4. Public Policy*

The doctrine of equitable mootness implicates two contrasting public policy concerns. First, there is an important interest in bankruptcy law to promote finality so court-approved reorganizations are able to go forward in reliance on an approval. *In re Info. Dialogues, Inc.*, 662 F.2d at 477. Second, there is a competing interest in a party's ability to secure review of a bankruptcy order which adversely affects the party. *Id.* A reviewing court must carefully balance these two considerations. *See In re Charter Commc'ns, Inc.*, 691 F.3d 476, 478 (2d Cir. 2012).

Appellant argues the policy concerning finality of a bankruptcy proceeding should be diminished here because there were discussions throughout significant portions of the bankruptcy proceeding that concerned the likelihood of an appeal. (Doc. 28, at 31-32). Appellant also argues the policy favoring finality is heightened in cases involving numerous, interrelated parties all relying on a final decision. (*Id.*, at 31). Here, appellant alleges there are relatively few parties and the proceedings were less complicated than cases where finality should be given a heightened interest. (*Id.*). In contrast, appellant emphasizes the important protection a party is afforded in being able to appeal an adverse decision. (*Id.*).

Appellee correctly points out this bankruptcy case involves multiple creditors and shareholders and the proceedings "have been winding through the court system for almost a year." (Doc. 36, at 11). After almost a year of proceedings, there is an interest in finality. That interest outweighs the interest in a party's right to appeal an adverse decision. This Court finds the policy of finality to be more important than the public

policy of permitting an appeal in this case. Thus, this factor weighs in favor of concluding the doctrine of equitable mootness applies.

### 5. *Equitable Mootness Conclusion*

The Court finds that the Plan was substantially consummated because most of the property to be transferred by the Plan has already been transferred to creditors. Although there are still some payments remaining, a plan does not need to be completed for it to be substantially consummated. 11 U.S.C. § 1101 (defining substantial confirmation as "all *or* substantially all") (emphasis added). The Court agrees the parties who would stand to lose the most in an appeal are already before the Court and are not third-parties. The effect of reversal, however, would still have a significant impact on the parties and would affect the success of the Plan. A successful appeal would lead to more uncertainty and delay. Because debtor is completely insolvent, it is unlikely an alternative plan would lead to a different outcome. The right to an appeal is a significant factor and the Court does not discount that interest. The ability of the parties to move forward with a plan they have already started performing and achieving a sense of finality, however, is more compelling in this case when accounting for the other factors considered. Therefore, the Court finds this case is equitably moot in light of the factors considered above.

The Court need not resolve the next three arguments because the Court has already decided this appeal is equitably moot. In the alternative, however, the Court will address the other issues contested by the parties.

### B. *Standing to Appeal Bankruptcy Decision*

Appellees further argue that appellant does not have standing to appeal the Bankruptcy Court's decision because the appellant cannot satisfy the "persons aggrieved standard." (Doc. 9, at 4).

"Standing in a bankruptcy appeal is narrower than Article III standing." *Opportunity Fin., LLC v. Kelly*, 822 F.3d 451, 458 (8th Cir. 2016) (citation omitted).

11

The Eighth Circuit has consistently "applied a person aggrieved standard" to determine appellate standing in Bankruptcy cases. *In re O & S Trucking, Inc. v. Mercedes Benz Fin. Servs. USA*, 811 F.3d 1020, 1023 (8th Cir. 2016). The narrower standing requirement reflects a need to limit collateral appeals and advances the public policy interest of providing finality in bankruptcy proceedings. *See Opportunity Fin., LLC*, 822 F.3d at 458; *Spenlinhauer v. O'Donnell*, 261 F.3d 113, 118 n.4 (1st Cir. 2001).

"An appellant is a party aggrieved if the bankruptcy court order diminishes the person's property, increases the person's burdens, or impairs the person's rights." *Opportunity Fin., LLC*, 822 F.3d at 458. "Under the person aggrieved doctrine, the appellant has the burden to demonstrate that the challenged order directly and adversely affect[ed] his pecuniary interests." *In re O & S Trucking, Inc.*, 811 F.3d at 1023. Potential pecuniary harm that is several steps removed from the challenged order is not sufficient to satisfy the aggrieved person requirement. *Opportunity Fin., LLC*, 822 F.3d at 458. For standing to exist there must be a "direct pecuniary impact." *Id*.

Appellant argues that it satisfies the standing requirement as a person aggrieved whose pecuniary interests were directly and adversely affected by the bankruptcy court's order confirming the Plan. (Doc. 24, at 35-38). Appellant alleges it was a stockholder and the "Plan confirmation took [appellant's] $6 million investment and reduced it to nothing" because the Plan left no assets to be disbursed to equity shareholders. (*Id.*, at 36). Appellant claims its investment loss was a direct result of the Plan Confirmation. (*Id.*, at 38).

Appellees argue appellant is not an aggrieved person because any pecuniary interest appellant may have lost was not a direct result of the Plan Confirmation. (Docs. 9, at 4-7; 36, at 1-2). Appellees argue that both the Plan approved by the Bankruptcy Court and an alternative plan presented to the Bankruptcy Court required debtor to pay creditors first and left nothing for equity stockholders. (Doc. 36, at 1-2). For appellant

to have any possibility of recovery, appellant would need to (1) convince this Court that the Plan should not have been confirmed, (2) convince the Bankruptcy Court to consider the alternate plan, and (3) go through the confirmation process with the alternative plan. (Doc. 9, at 6-7). Because neither plan would result in recovery or even raise the possibility of recovery, appellees argue the aggrieved person requirement has not been met.

If this appeal were not equitably moot, the Court would find that appellant would have standing as an aggrieved person. Appellees are correct that several steps might need to occur before appellant would be able to recover any of its losses, but appellees conflate the possibility of recovery with the possibility of pecuniary harm. The appellant's interest in its investment was harmed by the Plan Confirmation and even though its chance of recovery is several steps removed, the Plan confirmation did diminish appellant's property.

### C. Failure to Preserve

Appellees argue appellant should not be permitted to appeal the Disclosure Statement Approval Order because appellant waived such an argument on appeal by not objecting to the Disclosure Statement during the bankruptcy proceeding. (Doc. 9, at 7). Appellees allege the Bankruptcy Court approved the Disclosure Statement on March 20, 2019, but appellant did not object until April 12, 2019. (*Id.*). Because appellant did not object to the Disclosure Statement prior to the Order being approved, appellant did not properly preserve this argument for appeal. (*Id.*).

Appellant argues it was not given sufficient time to object to the Disclosure Statement. (Doc. 28, at 33). The Federal Rules of Bankruptcy ("FRBP") require that all debtors, all creditors, the trustee, and indentured trustees should be given "not less than 28 days' notice . . . for filing objections and the hearing to consider approval of a disclosure statement." FED. R. BANK. P. 2002(b). Appellant alleges it was only given

five days-notice to respond to the Disclosure Statement, which was not sufficient to file an objection and did not conform the FRBP's requirement. (Doc. 28, at 33). Appellees, however, allege appellant's attorney had notice of the Disclosure Statement, had a previous opportunity to object, and did object. (Doc. 36, at 10).

The Court understand appellees' argument to mean that appellant's attorney had sufficient notice of the Disclosure Statement and "did object to the Disclosure Statement." (*Id.*) (emphasis in original). If appellant's attorney did object to the Disclosure Statement before approval, then the claim was preserved and is not being presented for the first time here on appeal. Thus, if the appeal was not equitably moot, appellees' Motion to Dismiss for failure to preserve an objection would fail.

### *D. Timeliness*

Appellees argue the order denying the Objection to the Broadmoor claim should be dismissed as untimely. (Doc. 10). Both appellant and appellees agree that in bankruptcy proceedings the time to file an appeal of a final order is within 14 days of a final order being issued. 28 U.S.C. § 158(c)(2). The only disagreement between the parties is whether the Broadmoor Claim Objection denial was a final order. (Docs. 10, at 2; 28, at 38-39). Appellant argues the denial was not a final order because the Bankruptcy Court agreed to hear an offer of proof on the claim at a later time and because other parties could challenge the claim until the plan was confirmed. (Doc. 28, 40-46). Appellees, however, argue the denial was a final order because there were no remaining disputes related to the claim and the order left the Bankruptcy Court with nothing else to do but execute the order. (Doc. 32, at 6-7).

Title 28, United States Code, Section 158(c)(2) provides: "An appeal [from final judgments, orders, and decrees] shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules." Rule 8002 of the Bankruptcy

Rules states: "[A] notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed." Because the Bankruptcy Rule has been incorporated into the provision granting U.S. district courts jurisdiction, the 14-day requirement is jurisdictional and the district courts lack jurisdiction over anything filed beyond 14 days. *See, e.g.*, *In re Delta Engineering Inter., Inc.*, 270 F.3d 584, 586 (8th Cir. 2001). Whether a bankruptcy court's order is final depends on: "(1) [t]he extent to which the order leaves the bankruptcy court nothing to do but execute the order; (2) [t]he extent to which delay in obtaining review would prevent the aggrieved party from obtaining effective relief; and (3) [t]he extent to which reversal would require recommencement of the entire proceeding." *In re Hayes Bankr.*, 220 B.R. 57, 60 (N.D. Iowa 1998).

The Court acknowledges the three-factor analysis used by courts within the Eighth Circuit to determine the finality of an order and considers each factor here. First, the order did not leave the bankruptcy court with nothing to do but execute the order. After the Bankruptcy Court ruled on the challenge, the Court reserved the option to hear an offer of proof from appellant. (Doc. 28, at 40-42). Even if the Bankruptcy Court did not anticipate reversing its ruling, the Court's permission for the appellant to make an offer of proof at a later time meant there was still more to do than just execute the order. Additionally, denying appellant's claim objection did not preclude other parties from objecting to the claim. (Doc. 28, at 48). Other parties may not have objected and may have been unlikely to object, but the possibility that they could meant there was still more to do than execute the order. Second, delaying review of the order until the plan was confirmed does not necessarily prevent the aggrieved party from obtaining effective relief. Here, the Court does find the appeal is equitably moot and the appellant does not receive the relief sought, but factors other than delaying the review, such as the consummation of the Plan, prevented the party from obtaining effective relief. Third,

reversing the denial of the claim objection would not require recommencement of the entire proceeding. Even if a reversal was successful, it is only a piece of the overall process and would not require a recommencement of the entire proceeding. Thus, if this appeal was not equitably moot, appellees' Partial Motion to Dismiss the Bankruptcy Court's Order denying appellant's objection to Broadmoor's claim would fail.

### III. CONCLUSION

For the foregoing reasons, appellee's Motion to Dismiss Appeal and Partial Motion to Dismiss Appeal are **granted**.

**IT IS SO ORDERED** this 4th day of October, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa